# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

## No. ACM 39655

———————————

### UNITED STATES
*Appellee*

v.

### Lawrence J.D. BOWMAN
Staff Sergeant (E-5), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 17 September 2020

———————————

*Military Judge:* Jefferson B. Brown.

*Approved sentence:* Dishonorable discharge, confinement for 1 year, forfeiture of all pay and allowances, and reduction to E-1. Sentence adjudged 25 October 2018 by GCM convened at Whiteman Air Force Base, Missouri.

*For Appellant:* Major M. Dedra Campbell, USAF.

*For Appellee:* Lieutenant Colonel Brian C. Mason, USAF; Captain Kelsey B. Shust, USAF; Mary Ellen Payne, Esquire; Kelsey MacLeod (legal extern).[1]

Before LEWIS, D. JOHNSON, and RICHARDSON, *Appellate Military Judges.*

Judge RICHARDSON delivered the opinion of the court, in which Senior Judge LEWIS and Judge D. JOHNSON joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————

[1] Ms. MacLeod was at all times supervised by an attorney admitted to practice before this court.

_____

RICHARDSON, Judge:

A general court-martial comprised of officer members convicted Appellant, contrary to his pleas, of two specifications of attempted sexual abuse of a child on divers occasions,[2] in violation of Article 80, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 880.[3] The court-martial sentenced Appellant to a dishonorable discharge, confinement for one year, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority approved the sentence as adjudged.

Appellant raises six issues[4] on appeal: (1) whether the sentence of a dishonorable discharge is inappropriately severe; (2) whether the military judge erred in admitting Appellant's confession that was obtained without a proper rights advisement; (3) whether Appellant is entitled to sentence-appropriateness relief due to post-trial delay; (4) whether Appellant is entitled to new post-trial processing because the Government failed to properly serve him with a copy of the record of trial; (5) whether the military judge committed plain error by failing *sua sponte* to provide an instruction on the defense of entrapment; and (6) whether the military judge erred in denying the defense motion to compel production of a forensic psychologist.[5] With respect to issues (5) and (6), we have carefully considered Appellant's contentions and find they do not require further discussion or warrant relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987).

We find no prejudicial error and affirm the findings and sentence.

## I. BACKGROUND

On 14 September 2017, Appellant, then a 24-year-old male Airman assigned to Whiteman Air Force Base (AFB), Missouri, responded to a personal

---

[2] Specification 1 alleged an attempted lewd act by indecent communication; Specification 2 alleged an attempted lewd act by indecent exposure.

[3] Unless otherwise noted, all references in this opinion to the Uniform Code of Military Justice (UCMJ), Rules for Courts-Martial (R.C.M.), and Military Rules of Evidence are to the *Manual for Courts-Martial, United States* (2016 ed.).

[4] We have reordered the assignments of error.

[5] Appellant raises Issues (2), (4), (5), and (6) pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1992).

advertisement on the "Casual Encounters" section of "Craigslist,"[6] entitled "Anyone on Scott?? – w4m (Scott AFB)."[7,8] The advertisement read:

> Looking to hang out later, if you can't get on base don't waste your time!!! Hmu if you want otherwise good luck looking!

Appellant's response read:

> I'll be there tomorrow around noon.
> I'm 24, 5'11", 175 lbs, clean and ddf[9]
> I can get on base
> Let me know if you're interested

Additionally, Appellant attached a photo of himself naked from the chest down, holding in his hand his erect penis.[10]

On 18 September 2017, "Courtney" replied, stating she would be 15 years old in December. Unbeknownst to Appellant, "Courtney" was in fact Special Agent (SA) MD, an investigator with the Air Force Office of Special Investigations (AFOSI) at Scott AFB. He pretended to be "Courtney" as part of an undercover law enforcement operation designed to catch individuals looking to have sex with children or traffic children. After the exchange of several emails, Appellant and "Courtney" switched from communicating by email to phone text messaging. Their communication continued for about six hours, then resumed on 21 September 2017, for about three-and-a-half hours. During these conversations, Appellant used graphic terms and explicit language to describe the sexual acts he wanted to perform on "Courtney" and have her perform on him, and sent "Courtney" additional photos of his genitalia.

---

[6] Craigslist is an internet website that hosts advertisements and discussion forums.

[7] Testimony during Appellant's court-martial explained "w4m" meant "women for men."

[8] This opinion quotes an online advertisement, emails and text messages as they appear in the record of trial, without correction but with redactions as appropriate.

[9] Testimony during Appellant's court-martial explained "ddf" meant "drug and disease free."

[10] The Government did not allege this photo as part of Specification 2; Appellant sent it before "Courtney" stated her age.

## II. DISCUSSION

### A. Dishonorable Discharge

#### 1. Additional Background

Three days after Appellant's reply to the Craigslist advertisement, "Courtney" responded, and the following exchange occurred:

> ["Courtney":] Hey there…happy Monday!!!! Is that pic really u….I'll be 15 in December so I'm sure I'm too young but hey t was nice to meet u [flushed face emoji]

> [Appellant:] 15, wow that is really young. Why are you on Craigslist? And yes that is me [wink emoji]

> ["Courtney":] I mean why r u on Craigslist….lol what u lookin for….

> [Appellant:] I'm just looking to have some "fun" What are you looking for?

> ["Courtney":] the same… is my age an issue….:( if so I'm sorry to bother u

"Courtney" sent Appellant a headshot photo of "Courtney" smiling.[11] Appellant replied to Courtney's last question and the photo, "Not really. Do you have any other pics?" "Courtney" replied, "Yeah lol who doesn't…..do u ;)" after which Appellant send her three photos, including one of his bare chest and erect penis, with his Air Force uniform pants unbuttoned. After some conversation about photos, "Courtney" sent Appellant a different photo of her face, and a photo of her knees to her feet, commenting on the latter, "this is the most u get of my body lol…nothing special…..so what is ur idea of fun mister… ."

The following exchange then occurred:

> [Appellant:] God you're cute! I just can't risk it, I'm sorry.

> ["Courtney":] …...uhhh thanks. But ok whatever I mean we could at least talk

> ["Courtney":] Please don't tell my mom………I don't want to get in trouble

> [Appellant:] Probably not a good idea, but god I would love to worship your body!

> ["Courtney":] Lol all talk mister….I would love that tho

---

[11] SA MD sent Appellant an age-regressed photo of another AFOSI agent.

["Courtney":] Even better if you fly planes…..:) do u fly planes

[Appellant:] Ugh I want you! What are you doing right now?

["Courtney":] Supposed to be "sick" lol

["Courtney":] bored, I should have just went to school….smh

[Appellant:] Sounds like you're more horny than sick! Lol

["Courtney":] Shhhhhhh…….lol you made me blush….

Appellant and "Courtney" then switched to communicating via phone text message. After some introductions, "Courtney" told Appellant her mother works until 8:00 p.m. and her father is deployed. The following exchange occurred:

[Appellant]: So you're looking for someone to get in bed with you [smirk emoji]

["Courtney"]: Lol….u know I asked u what ur idea of fun was n u ignored me….

[Appellant]: Oops my bad! I'm thinking we both have the same idea of what fun is [smirk emoji]

["Courtney"]: I mean I'm not experienced and kinda lookin to expand a little but ur idea may be too much or not enough that's why I asked

["Courtney"]: Ha but yes I'm sure we do

[Appellant]: I would love to just hangout and eventually start making out. I'm sure that would lead to your bedroom

["Courtney"]: Lol…..to be honest I could make out with the boys at school…..

[Appellant]: True, you could. Or you could invite someone over who knows what they're doing and how to make you c*m on my tongue

["Courtney"]: …..wow… that sounds amazing and, that would be a first

The conversation continued in that vein. At one point, Appellant reconsidered continuing the conversation, stating, "[y]ou know what this is dumb of me. I shouldn't be talking to you." However, Appellant continued to communicate with "Courtney," which included discussing vague plans to meet at her house. Appellant soon reconsidered that proposal, then ended the text conversation.

Three days later, Appellant reinitiated the Craigslist conversation, stating, "[h]ey did you ever find anyone to come over and f**ked your 14 y/o p**sy?"

"Courtney" replied by text message and not via Craigslist. Their subsequent conversation was similar in content to their conversation on 18 September 2017. Appellant sent "Courtney" two more photos showing his naked chest and exposed genitalia.

SA MD traced the phone number from the text messages to Appellant. SA MD coordinated with AFOSI agents at Whiteman AFB, who on 18 October 2017 interviewed Appellant, and searched Appellant's residence and seized digital media.

Appellant testified in his own defense at trial. He repeatedly claimed he did not believe the person was actually a 14- or 15-year-old girl, and thought the person was only pretending to be that young.

The military judge provided the court members a standard instruction on mendacity, allowing them to factor into their consideration of an appropriate sentence—within certain restraints—false testimony from Appellant.[12] He also merged the two attempted sexual abuse offenses for the purpose of sentencing, reducing the maximum confinement that the members could adjudge from 30 years to 15 years.

Government counsel urged the court members to sentence Appellant to a dishonorable discharge, confinement for five years, total forfeitures, and reduction to the grade of E-1. Trial defense counsel focused his argument on countering trial counsel's suggestion of five years' confinement; he did not argue for a specific sentence and devoted little time to the possibility of a punitive discharge. The court members' sentence included a dishonorable discharge and one year of confinement.

**2. Law**

We review sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006) (footnote omitted). We may affirm only as much of the sentence as we find correct in law and fact and determine should be approved on the basis of the entire record. Article 66(c), UCMJ. "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense, the appellant's record of service, and all matters contained in the record of trial." *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009) (per curiam) (citations omitted). While we have great discretion to determine whether a sentence is appropriate, we cannot grant mercy. *United States v. Nerad*, 69 M.J. 138, 142–48 (C.A.A.F. 2010) (citation omitted).

---

[12] *See United States v. Jenkins*, 54 M.J. 12 (C.A.A.F. 2000).

### 3. Analysis

Appellant claims his sentence to a dishonorable discharge was inappropriately severe. He concedes the offenses of which he was convicted are serious, but notes the absence of a victim and the short duration of the communication with "Courtney" that did not include a specific plan to meet up. Additionally, Appellant states that "[h]e was not a repeat offender and had an exemplary military record as demonstrated by his performance reports, character letters from supervisors, and his numerous awards and accolades."

To find Appellant guilty, the court members would have found he repeatedly lied in his sworn testimony about an element of the offenses of which he was found guilty, and such false testimony is a factor when considering Appellant's rehabilitation potential and the appropriate sentence for those offenses. *See Jenkins*, 54 M.J. at 19–20. We have given individualized consideration to Appellant, the nature and seriousness of his offenses, his record of service, and all other matters contained in the record of trial. Understanding we have a statutory responsibility to affirm only so much of the sentence that is correct and should be approved, Article 66(c), UCMJ, we determine the sentence is not inappropriately severe.

## B. Appellant's Confession

Appellant asserts the military judge erred when he admitted into evidence Appellant's confession to AFOSI because the agent informed Appellant during the rights advisement that the agent suspected Appellant of violating Article 120, UCMJ, 10 U.S.C. § 920, and not Article 120b, UCMJ, 10 U.S.C. § 920b. We find Appellant waived this issue.

### 1. Additional Background

At Appellant's trial, the Government offered into evidence Appellant's written statement to AFOSI and portions of the video/audio recording of his interview with AFOSI. In response to each, trial defense counsel stated, "No objection, Your Honor." The Government offered a redacted version of the recording, "[b]ecause there are portions that [they had] discussed with [the D]efense that [they did] not believe that [the members] should see." Minutes before the Government played the confession to the members, trial defense counsel confirmed they agreed with the Government which portions of the video to play to the members. In the recorded AFOSI interview, Appellant told the agents that before the interview he signed a consent document in his First Sergeant's office that said the allegation was "sexual abuse of a child." During trial defense counsel's cross-examination, one of the interviewing agents agreed that "when [Appellant] entered that [interview] room, he already knew what was suspected."

**2. Law**

An accused must file a motion to suppress his confession prior to entry of pleas. Mil. R. Evid. 304(f)(1). Failure to file a motion at trial waives the objection. *Id.*[13] In addition, when an appellant at trial states he has "no objection" to the admission of his confession, he waives the issue on appeal. *See United States v. Ahern*, 76 M.J. 194, 198 (C.A.A.F. 2017).

Nonetheless, under Article 66(c), UCMJ, the Courts of Criminal Appeals have the unique statutory responsibility to affirm the findings and sentence that are correct and "should be approved." 10 U.S.C. § 866(c). Thus, we retain the authority to address errors raised for the first time on appeal despite waiver at trial. *See, e.g.*, *United States v. Hardy*, 77 M.J. 438, 442–43 (C.A.A.F. 2018); *United States v. Chin*, 75 M.J. 220, 223 (C.A.A.F. 2016) (citation omitted) (addressing this court's responsibility to "assess the entire record to determine whether to leave an accused's waiver intact, or to correct the error").

**3. Analysis**

We find Appellant waived objection to admission at trial of his written and recorded statements to AFOSI, both by operation of Mil. R. Evid. 304(f) and trial defense counsel's affirmative statement to the military judge that he had no objection. Further, having found no error, we decline to pierce such waiver in this case.

**C. Timeliness of Post-trial Processing**

The convening authority took action on Appellant's case 135 days after Appellant was sentenced. Appellant asks this court to "grant him appropriate relief" based on this presumptively unreasonable delay. Having found no prejudice, we decline to do so.

**1. Additional Background**

Appellant was sentenced on 25 October 2018. Trial defense counsel requested speedy post-trial processing on 14 January 2019, and on 6 March 2019 requested relief in clemency due to delayed post-trial processing. The convening authority took action in Appellant's case on 9 March 2019; he did not grant clemency.

---

[13] "This is not a case where the rule uses the word 'waiver' but actually means 'forfeiture.'" *United States v. Ahern*, 76 M.J. 194, 197 (C.A.A.F. 2017) (differentiating Mil. R. Evid. 304(f)(1) from R.C.M. 902(f)).

In a declaration the Government submitted to this court, the court reporter on this case detailed technological problems she encountered while transcribing the proceedings, as well as her efforts to solve those problems. Also, she outlined other cases for which she had responsibilities.

### 2. Law

Where the convening authority's action is not taken within 120 days of the end of trial, we apply the presumption of unreasonable post-trial delay established by the United States Court of Appeals for the Armed Forces (CAAF) in *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006). We review de novo whether Appellant's due process rights were violated because of post-trial delay. *Id.* at 135 (citations omitted). In conducting our analysis, we have considered the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530–32 (1972): (1) the length of the delay; (2) the reasons for the delay; (3) Appellant's assertion of the right to timely review and appeal; and (4) prejudice. "[These] four factors are balanced, with no single factor being required to find that post-trial delay constitutes a due process violation." *Moreno*, 63 M.J. at 136 (citing *Barker*, 407 U.S. at 533).

### 3. Analysis

The first factor, the length of the delay, moderately weighs in Appellant's favor; the Government exceeded the *Moreno* standard for a presumptively unreasonable delay by 15 days.

The second factor, the reasons for the delay, slightly weighs in Appellant's favor. The Government points to the court reporter's technological problems and active steps to solve them. Indeed, a review of the record shows the court reporter diligently worked to transcribe the testimony and complete an error-free record of trial in this case.

The third factor, whether Appellant exercised his right to speedy appellate review, weighs in Appellant's favor. Appellant submitted a demand for speedy post-trial processing 78 days after the conclusion of his trial, and addressed prejudice from this delay in his clemency request to the convening authority.

As to the final factor, prejudice arising from post-trial processing delays, *Moreno* sets forth three interests to consider. 63 M.J. at 138–39. The first, oppressive incarceration, does not apply to Appellant because he does not prevail in his substantive appeal. *See id.* at 139. The second, anxiety and concern, is likewise inapplicable. Appellant states he suffered a shingles rash "which can be caused by mental and physical stress," but does not state whether this was before or after the convening authority took action. Appellant avers that the post-trial delay in his case made the stress of confinement and trying to "put everything behind [him] and focus on moving forward with [his] life" worse. Appellant's complaint does not rise to the level of "particularized anxiety or

concern that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision." *Id.* at 140. The third and final factor, impairment of an appellant's ability to present a defense at a rehearing, is mooted by Appellant's failure to prevail in his substantive appeal. *See id.* Prejudice, then, weighs in the Government's favor.

Where, as here, there is no discernible prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006). Considering the relevant factors together, we conclude that the 135 days that elapsed between the conclusion of trial and the convening authority's action are not so egregious as to impugn the fairness and integrity of the military justice system.

We also determine that no *Tardif* relief is warranted in this case. *See United States v. Tardif*, 57 M.J. 219, 223–24 (C.A.A.F. 2002); *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016). In *Tardif*, the CAAF recognized that "a Court of Criminal Appeals has authority under Article 66(c) to grant relief for excessive post-trial delay without a showing of 'actual prejudice' within the meaning of Article 59(a)." 57 M.J. at 224 (citation omitted). Furthermore, we as a service Court of Criminal Appeals are required by Article 66(c), UCMJ, to determine which findings of guilty and the sentence or part thereof "should be approved." *See also Tardif*, 57 M.J. at 224. Considering all the facts and circumstances of Appellant's case, we decline to exercise our Article 66(c), UCMJ, authority to grant relief for the post-trial delay.

## D. Service of Record of Trial on Appellant

Appellant asserts the Government failed to provide him a complete record of trial when he was provided a copy with certain portions redacted. Appellant claims this impacted his ability to participate in the preparation of his clemency matters. Even if we assume error, we find no prejudice.

### 1. Additional Background

Appellant identifies multiple documents and pages missing from his copy of the record of trial:

1. First Indorsement: Attachment 2;

2. Preliminary Hearing Officer (PHO) Appointment Letter: Pages 2, 5, 10, and 15 of Attachment 3;

3. PHO Report: Pages 30, 42–43, 96, 101–02 of Attachment 3;

4. Transcript: Pages 19, 25, 206–08, 230–33, 252, 255, 423–24, 441, 513, 515, 518–19, 527, and 596;

5. Prosecution Exhibits: 2, 3, 5–6, and 8–9;

6. Defense Exhibits: A and B; and

7. Appellate Exhibits: Attachment 1 to Appellate Exhibit I, Appellate Exhibit III, Attachments 3–5 to Appellate Exhibit IV, and Appellate Exhibits XXIV, XXVIII, and XXXI.

Items one through three repeat exactly the items listed on the cover sheet in the original record of trial identifying "Sexually Explicit/Graphic Materials Certificate substituted in Accused's [record of trial] copy" and "not ordered sealed by the court." Items four through seven repeat exactly the items listed on a similarly styled cover sheet.

Appellant's trial defense counsel submitted a request for clemency to the convening authority; Appellant did not submit a personal request. Counsel addressed the post-trial processing delay, stating "[Appellant] underwent his clemency and parole hearing through the confinement system without even being served the record of the trial and with no final action from the convening authority considered." Counsel made no request for Appellant to receive a copy of the record of trial with the sexually explicit materials included.

**2. Law**

Whether proper completion of post-trial processing has been accomplished is reviewed de novo. *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000). When raising a post-trial processing error, an appellant has the burden to allege prejudice resulting from the error and a remedy to undo the prejudice. *See United States v. Lee*, 50 M.J. 296, 298 (C.A.A.F. 1999). When a post-trial recommendation to the convening authority is erroneous, "[t]here must be a colorable showing of possible prejudice in terms of how the omission potentially affected an appellant's opportunity for clemency." *United States v. Scalo*, 60 M.J. 435, 437 (C.A.A.F. 2005).

Article 54(c)(1)(A), UCMJ, 10 U.S.C. § 854(c)(1)(A), requires a "complete record of the proceedings and testimony" to be prepared for any general court-martial resulting in a punitive discharge. The accused is to receive a copy of the record of the proceedings soon after authentication. Article 54(d), UCMJ, 10 U.S.C. § 854(d).

When a military judge does not order sexually explicit materials sealed in a record of trial, the Government nevertheless may remove them from the copy of the record of trial provided to the accused. Air Force Manual (AFMAN) 51-

203, *Records of Trial*, ¶ 9.4.1 (4 Sep. 2018).[14] "In place of the sexually explicit materials, insert a certificate stating the materials were removed due to their sexually explicit content and that the original [record of trial], which includes the materials, may be inspected at AFLOA/JAJM [(Air Force Legal Operations Agency/Military Justice Division)]." *Id*. The sexually explicit materials are not removed from the copies forwarded to AFLOA/JAJM, the copy maintained at the base legal office, and the original. AFMAN 51-203, ¶ 9.4.2.

**3. Analysis**

The court reporter in this case complied with the applicable Air Force regulation when she removed sexually explicit materials from Appellant's copy of the record of trial. Assuming compliance with the AFMAN nevertheless could have affected Appellant's opportunity for clemency, we consider prejudice.

Appellant asserts we should apply the standard emphasized in *Scalo*, requiring a colorable showing of possible prejudice. Assuming without deciding that this is the correct standard, Appellant has not met that low threshold.

Appellant essentially claims he was unable to re-read the sexually charged messages between him and a person purporting to be a child. In his declaration to this court,[15] he avers "[e]mphasizing certain aspects of the conversation could have strengthened [his] request for clemency" and he instead "had to rely solely on what [he] could recall about [his] investigation and trial in order to build [his] case." Appellant fails, however, to reveal the nature of his "case" and how relying on these sexually explicit materials could help him persuade the convening authority to grant clemency. Moreover, we will not assume Appellant would be permitted to possess this material while in confinement. Finally, the limits on the convening authority's power to approve a lesser sentence severely narrowed the relief that the convening authority was authorized to grant. *See* Article 60(c), UCMJ, 10 U.S.C. § 860(c). We find no colorable showing of possible prejudice in this case.

---

[14] In the 2019 edition of the *Manual for Courts-Martial*, the Rule for Courts-Martial implementing Article 54, UCMJ, specifically directs practitioners to follow Service guidance: "Following certification of the record of trial . . . a court reporter shall, in accordance with regulations issued by the Secretary concerned, provide a copy of the certified record of trial free of charge to . . . the accused." R.C.M. 1112(e)(1) (*Manual for Courts-Martial*, *United States* (2019 ed.)).

[15] In light of *United States v. Jessie*, 79 M.J. 437 (C.A.A.F. 2020), we consider Appellant's declaration that expands on (1) a post-trial processing delay claim he raised during clemency; and (2) a matter raised in the original record of trial that shows sexually explicit materials were absent from Appellant's copy.

### III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court