UNITED STATES

v.

**Airman Terrance L. ANDERSON,
United States Air Force.**

ACM 37157.

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 20 Oct. 2007.

7 April 2009.

Appellate Counsel for the Appellant: Captain Tiffany M. Wagner (argued), Colonel Nikki Hall, Major Shannon A. Bennett, Major Lance J. Wood, and Dwight Sullivan.

Appellate Counsel for the United States: Major Jeremy S. Weber (argued), Colonel Gerald R. Bruce, and Captain Matthew D. Talcott.

Before WISE, BRAND, and FRANCIS, Appellate Military Judges.

PER CURIAM:

In accordance with his pleas, the appellant was convicted of one charge and specification of conspiracy to commit aggravated assault,

one charge and specification of reckless endangerment, and one charge and four specifications of obstruction of justice, in violation of Articles 81 and 134, UCMJ, 10 U.S.C. §§ 881, 934. The appellant was also charged with attempted murder, in violation of Article 80, UCMJ, 10 U.S.C. § 880, but pled guilty to the lesser included offense of aggravated assault with a loaded firearm, in violation of Article 128, UCMJ, 10 U.S.C. § 928. Contrary to that plea, a panel of officers found him guilty of intentional infliction of grievous bodily harm, in violation of Article 128, UCMJ,[1] and sentenced him to confinement for 15 years, reduction to E–1, forfeiture of all pay and allowances, and a dishonorable discharge. He now argues that his sentence to 15 years confinement is inappropriately severe in light of his co-actor's, Airman First Class (A1C) FN, sentence to 10 years confinement, reduction to E–1, and a dishonorable discharge. After reviewing the entire record of trial, briefs from both parties, and hearing oral argument on the matter,[2] we affirm the findings and sentence as adjudged.[3]

## Facts

The charges arose from the appellant's shooting of Senior Airman (SrA) TM on 28 May 2007, and from the appellant's subsequent efforts to impede the Grand Forks, North Dakota police department's investigation into the shooting.

The appellant was assigned to Grand Forks Air Force Base. On 28 May 2007, the appellant's co-actor, A1C FN, was driving her car with two others, JR and SrA LR. JR was SrA LR's husband. JR had decided to go to the home of Airman (Amn) SH to fight him. Amn SH lived at the Autumn Ridge Apartments. A1C FN willingly took JR to Autumn Ridge so the fight could take place; however, A1C FN first called the appellant and asked if she could have "the other piece" meaning the appellant's gun. The appellant agreed and A1C FN immediately drove to his residence, going in alone to get the gun. Rather than giving A1C FN his gun, the appellant returned to the car with A1C FN and his gun and joined A1C FN, JR, and SrA LR in the car. When the appellant got in the car, he loaded at least one round into his gun, using a bandana to hold the bullet as he put it in the magazine. The group in the car proceeded to the Autumn Ridge Apartments. According to LR, on the way, A1C FN told the appellant "[SrA TM] is not here." The appellant responded "It's OK, I know where he live, I know where he be."

Upon arriving at the Autumn Ridge Apartments, it quickly became apparent that JR and Amn SH would not be fighting. JR and SrA LR left A1C FN's car and waited across the street from the apartment complex. A1C FN then drove around the complex with the appellant in the front passenger seat. During one circuit, A1C FN and the appellant spotted SrA TM standing outside an entrance to the apartment building.[4] The appellant said he was going to "burn" SrA TM (A1C FN testified she understood this to mean he was going to "shoot" SrA TM), and A1C FN reminded him to roll her window down.

The appellant began firing at SrA TM, but could not control his weapon because he was holding it with only one hand. The appellant re-gripped his weapon, re-aimed, and continued to fire at SrA TM. In total, the appellant fired six shots, one of which struck SrA TM in the thigh and broke his femur. The other five struck the apartment building, with at least one bullet entering another resident's

---

1. This is also a lesser included offense of the charge of attempted murder. *Manual for Courts–Martial, United States (MCM)*, Part IV, ¶ 43.d (2005 ed.).

2. The issue was argued before this Court as part of the Project Outreach Program at Charleston Air Force Base, South Carolina.

3. Although not affecting the legal sufficiency of the findings or sentence, the court-martial order erroneously states that the appellant was sentenced by a military judge when in fact he was sentenced by a panel of officers. We order the promulgation of a corrected court-martial order.

4. Senior Airman (SrA) TM did not live at Autumn Ridge. He was there at the request of his friend, Staff Sergeant (SSgt) EC, who was also Airman (Amn) SH's fiancé. SSgt EC was visiting SrA TM when she learned of the potential fight between JR and Amn SH, and she asked SrA TM to bring her to Amn SH's apartment.

apartment, coming to rest inside her kitchen cabinets. After shooting SrA TM, the appellant and A1C FN drove away.

The appellant was quickly named as a suspect in the shooting, and after some questioning by Grand Forks police detectives,[5] he confessed. However, he initially made several false statements and denials, including denying that A1C FN even knew he brought a gun to the Autumn Ridge Apartments, claiming that he had thrown his weapon away, and claiming a scratch on his thumb he received from the slide of his weapon was actually caused by his girlfriend. He also asked his girlfriend to provide an alibi for him for the time SrA TM was shot. Furthermore, the appellant insisted he shot SrA TM accidentally and that he only intended to fire his weapon "behind" SrA TM "to scare him."

A1C FN eventually entered into a pretrial agreement and pled guilty to taking part in the shooting and to also initially lying to investigators. She was sentenced by a military judge to 17 years confinement, reduction to E–1, and a dishonorable discharge, but pursuant to her pretrial agreement, her sentence to confinement was reduced to 10 years. At the appellant's trial, she testified for the prosecution in their case-in-chief, in which they attempted to prove the attempted murder charge.

The only matter at issue in the appellant's trial was his intent. He pled guilty to aggravated assault with a loaded firearm, in violation of Article 128, UCMJ, but denied that he intended to shoot SrA TM, much less kill him. There was no dispute that the appellant knew he was shooting at SrA TM. However, the appellant's motives remain unclear. SrA TM testified, and the appellant said during his police interviews, that they did not know each other, although the appellant knew who SrA TM was. Other witnesses testified that the appellant was angry at SrA TM for sending a text to the appellant's girlfriend some months prior to 28 May 2007. The text stated words to the effect of "Hey, how have you been?" and SrA TM sent only that single message. The appellant's state-

ments about knowing where SrA TM was, the manner in which the appellant loaded his weapon, and his statement that he was going to "burn" SrA TM, as well as how he re-gripped the weapon after firing two shots, were also put into evidence. The government argued that the evidence conclusively established the appellant's intent was to murder SrA TM, and that he was therefore guilty of attempted murder, in violation of Article 80, UCMJ. The members found the appellant guilty of intentionally shooting SrA TM, in violation of Article 128, UCMJ, but acquitted him of the greater offense of attempted murder.

### Sentence Appropriateness

■ We "may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as [we find] correct in law and fact and determine[ ], on the basis of the entire record, should be approved." Article 66(c), UCMJ, 10 U.S.C. § 866(c). We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense, the appellant's record of service, and all matters contained in the record of trial. *United States v. Snelling,* 14 M.J. 267, 268 (C.M.A.1982); *United States v. Rangel,* 64 M.J. 678, 686 (A.F.Ct. Crim.App.2007), *aff'd,* 65 M.J. 310 (C.A.A.F. 2007). We have a great deal of discretion in determining whether a particular sentence is appropriate, but we are not authorized to engage in exercises of clemency. *United States v. Lacy,* 50 M.J. 286, 288 (C.A.A.F. 1999); *United States v. Healy,* 26 M.J. 394, 395–96 (C.M.A.1988).

■ In making a sentence appropriateness determination, we are required to examine sentences in closely related cases and permitted, but not required, to do so in other cases. *United States v. Wacha,* 55 M.J. 266, 267–68 (C.A.A.F.2001); *United States v. Christian,* 63 M.J. 714, 717 (A.F.Ct.Crim. App.2006). "[A]n appellant bears the burden of demonstrating that any cited cases are 'closely related' to his or her case and that the sentences are 'highly disparate.' If the

---

5. The shooting was initially investigated by civilian police before being turned over to the Air Force.

appellant meets that burden ... then the Government must show that there is a rational basis for the disparity." *Lacy,* 50 M.J. at 288. Because the appellant urges us to find his sentence inappropriately severe in light of A1C FN's sentence, we begin with the analysis laid out in *Lacy,* asking: (1) whether the appellant's and A1C FN's cases are closely related, (2) whether their sentences are "highly disparate," and (3) if so, whether there is a rational basis for the disparity. *Id.*

■ Cases are "closely related" where, for example, they involve "coactors involved in a common crime, servicemembers involved in a common or parallel scheme, or some other direct nexus between the servicemembers whose sentences are sought to be compared." *Id., quoted in Rangel,* 64 M.J. at 686. The appellant correctly notes that the charges of which both the appellant and A1C FN were convicted stem from exactly the same incident: shooting A1C TM. The appellant and A1C FN were both also convicted of obstructing justice by lying to police about the incident. Under the circumstances, we find the cases are closely related.

■ In assessing whether or not the sentences are highly disparate, we are presented with the question of whether we should compare the appellant's adjudged and approved sentence of confinement for 15 years with A1C FN's adjudged sentence of confinement for 17 years, or with her approved sentence of confinement for 10 years. The appellant urges us to compare the sentences of 15 years to 10 years. However, our superior court, in discussing sentence disparity, has said "Courts of Criminal Appeals are required to engage in sentence comparison only 'in those rare instances in which sentence appropriateness can be fairly determined only by reference to disparate sentences *adjudged* in closely related cases.'" *United States v. Sothen,* 54 M.J. 294, 296 (C.A.A.F.2001) (emphasis added) (quoting *United States v. Ballard,* 20 M.J. 282, 283 (C.M.A.1985)). More recently, the Navy–Marine Corps Court of Criminal Appeals ex-

plicitly addressed the issue and concluded that adjudged, not approved, sentences should be compared when examining sentence disparity. *United States v. Phillips,* NMCCA 200300969, 2005 WL 3115313 (N.M.Ct.Crim.App. 21 Nov. 2005) (unpub. op.); *aff'd on other grounds,* 64 M.J. 176 (C.A.A.F.2006). We will follow the guidance of our superior court and examine the adjudged sentences in each case. In this case, therefore, we find that the sentences—17 years and 15 years—are not disparate. In fact, A1C FN's adjudged sentence was longer than the appellant's.

Assuming for the sake of analysis that, as the appellant argues, his sentence should be compared with A1C FN's approved sentence of 10 years of confinement, we still would not find the sentences to be highly disparate. While the appellant's approved sentence is considerably longer than A1C FN's approved sentence, the difference is not so dramatic as to be "highly disparate." *Cf. Sothen,* 54 M.J. 294 (sentence consisting of a dishonorable discharge, reduction to E–1, and confinement for 25 years was highly disparate from a sentence of confinement for 3 years and a fine); *United States v. Kent,* 9 M.J. 836 (A.F.C.M.R.1980) (sentence of four months confinement and a bad-conduct discharge highly disparate from a sentence of 30 days confinement with no punitive discharge); *see also United States v. Rodriguez,* 57 M.J. 765, 773–74 (N.M.Ct.Crim.App.2002) (sentence of confinement for 10 years was not highly disparate from the co-actor's 4–year sentence, which was reduced from the adjudged 8 years confinement due to a pretrial agreement and clemency action).

In addition to comparing sentences, when considering disparity this Court may consider the difference between the actual sentences and potential maximum sentences. *Lacy,* 50 M.J. at 289, *cited in United States v. Johnson,* ACM 36631, 2007 WL 2500237 (A.F. Ct.Crim.App. 31 Aug 2007) (unpub. op.). The appellant faced a maximum of 29 years confinement.[6] A1C FN faced a total of 39 years confinement. Although A1C FN's

---

6. The military judge ruled three of the obstruction of justice specifications were multiplicious for sentencing purposes. The remaining charges

were punishable by a maximum of 29 years confinement.

approved sentence was shorter than the appellant's, both in absolute terms and relative to the maximum penalty she faced, we view the question as whether each accused received less than the maximum, rather than engage in a rigid mathematical comparison. *Lacy*, 50 M.J. at 289; *United States v. Plyarentas*, NMCM 200000908, 2002 WL 31371956 (N.M. Ct.Crim.App. 18 Oct. 2002) (unpub. op.). Because the appellant and A1C FN both received far less than the maximum punishment they faced, this factor weighs against the appellant.

Finally, we find that, even if we were to conclude that the appellant's and A1C FN's sentences are highly disparate, there is unquestionably a rational basis for the difference. In urging us to conclude to the contrary, the appellant argues, as he did at trial, that he acted out of a misguided sense of needing to protect A1C FN because they had a "big brother-little sister" relationship. He further argues that A1C FN is the more culpable party, because she called and asked him for his gun, prompting him to bring it to the Autumn Ridge Apartments. The appellant also stresses his own contrition and expressions of remorse, and contrasts himself with A1C FN's callousness throughout the investigation and trial.[7]

We find a rational, if not compelling, basis for any sentence disparity in the basic difference between the appellant's case and A1C FN's: he shot someone, A1C FN did not. Both are legally responsible for shooting SrA TM. Article 77, UCMJ, 10 U.S.C. § 877. However, the crimes for which the appellant and A1C FN were convicted carry a range of punishment—from the maximum authorized to no punishment at all. Where an individual accused is sentenced within that spectrum depends on the facts and circumstances of each case. *See United States v. Durant*, 55 M.J. 258, 261-62 (C.A.A.F.2001) (citations omitted) (disparity is tolerable in closely related cases as long as each accused is sentenced as an individual). When we compare A1C FN's involvement in the shooting of SrA TM—aiding the appellant's crime by driving

him around the Autumn Ridge Apartments until he saw and shot SrA TM, and then reminding him to roll the car's window down before the appellant shot SrA TM—with the appellant's—firing six shots in SrA TM's direction, including at least one that entered the apartment of another resident, and going so far as to re-grip and re-aim his weapon in SrA TM's direction when his first two shots missed the mark—we find a rational basis for the disparity in the two sentences.

Furthermore, we note that, notwithstanding the appellant's argument that he pled guilty to his crimes and expressed contrition, he did not in fact plead guilty to intentionally shooting SrA TM. While the appellant admitted guilt to the offense of *unintentionally* shooting SrA TM, and is therefore entitled to some consideration, any consideration is tempered by the fact that he did not plead guilty to the greater offense for which he was convicted, and for which the maximum period of confinement is 10 years, not 8 years—the maximum period of confinement to which the appellant was exposed by his plea of guilty to unintentionally shooting SrA TM.

Finally, we note that A1C FN's sentence was a result of her entry into a pretrial agreement with the convening authority, by which terms she pled guilty, saved the government the time and expense of prosecuting her case, and cooperated with the government's prosecution of the appellant. This too meets the low threshold of establishing a rational basis for any disparity. *United States v. Johnson*, ACM 36631, 2007 WL 2500237 (A.F. Ct.Crim.App. 31 Aug 2007) (unpub. op.), *pet. denied*, 66 M.J. 112 (C.A.A.F.2008); *United States v. Debbas*, ACM S31052, 2007 WL 1052544 (A.F.Ct. Crim.App. 30 Mar. 2007) (unpub. op.), *pet. denied*, 65 M.J. 433 (C.A.A.F.2007).

At oral argument, the appellant also raised the issue of sentence appropriateness in general, in addition to sentence comparison, which is but one aspect of sentence appropriateness. *Snelling*, 14 M.J. at 268 (courts

---

7. For example, the appellant notes that he was crying and inquiring about SrA TM's condition during his police interviews, whereas A1C FN was, in the words of one detective, "tough." In addition, the appellant points to A1C FN's testimony at trial, in which she admitted wanting SrA TM to be shot, and expressed indifference as to whether or not he was killed.

may "consider sentence comparison as an *aspect* of sentence appropriateness, [but] it is only one of many aspects of that consideration." (Emphasis in original)). As required by Article 66, UCMJ, we also consider whether the sentence is appropriate for this appellant and his offenses. *Id.; Rangel*, 64 M.J. at 686. The appellant shot a fellow airman for reasons unknown. It is clear from the record that SrA TM did not know the appellant and the appellant's knowledge of SrA TM was at most limited to the fact that SrA TM had at some time in the past sent the appellant's girlfriend a single, innocuous text message. Whether the appellant shot another member of the military for no reason whatsoever, or because he felt slighted over a text message in the past, the viciousness of his attack is shocking. Furthermore, we note that at least one bullet fired by the appellant entered a civilian's apartment, endangering the resident. Considering the appellant's offense, his record of service, and all matters contained in the record of trial, we find his sentence to be appropriate.

### Conclusion

The approved findings and sentence are correct in law and fact, and no error prejudicial to the substantial rights of the appellant occurred. Article 66(c), UCMJ; *United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F.2000). Accordingly, the approved findings and sentence are

AFFIRMED.