# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

_____

**No. ACM S32372**

_____

**UNITED STATES**
*Appellee*

**v.**

**Latisha K. WELLS**
Airman First Class (E-3), U.S. Air Force, *Appellant*

_____

Appeal from the United States Air Force Trial Judiciary

Decided 31 March 2017

_____

*Military Judge:* Michael P. Dillinger.

*Approved sentence:* Bad-conduct discharge, confinement for 75 days, forfeiture of $1,000.00 pay per month for 4 months, and reduction to E-1. Sentence adjudged 24 June 2015 by SpCM convened at Joint Base San Antonio-Lackland, Texas.

*For Appellant:* Captain Annie W. Morgan, USAF.

*For Appellee:* Major Meredith L. Steer, USAF; Gerald R. Bruce, Esquire.

Before MAYBERRY, SPERANZA, and JOHNSON, *Appellate Military Judges.*

Senior Judge MAYBERRY delivered the opinion of the court, in which Judges SPERANZA and JOHNSON joined.

_____

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

_____

MAYBERRY, Senior Judge:

A special court-martial composed of a military judge sitting alone convicted Appellant, consistent with her pleas pursuant to a pretrial agreement, of

assault consummated by a battery by unlawfully touching Airman First Class (A1C) LE on the mouth with her hand, underage drinking, and obstruction of justice in violation of Articles 128 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 928, 934. The adjudged and approved sentence consisted of a bad-conduct discharge, confinement for 75 days, forfeiture of $1,000.00 per month for four months, and reduction to E-1.

Appellant alleges: (1) unreasonable post-trial delay; and (2) the sentence is inappropriately severe. Finding no relief is warranted, we affirm the findings and sentence as approved by the convening authority.

## I. BACKGROUND

Appellant and a number of other permanent party Airmen gathered in her dorm room the evening of 30 May 2014. Appellant, her suitemate, and a third female Airman, A1C LE, were drinking. Appellant was not yet 21 years of age. Throughout the evening, other Airmen, mostly males, joined the group. Later, A1C LE became extremely intoxicated, vomited in the common area sink, and lay down on Appellant's bed. At some point after that, A1C LE engaged in sexual conduct with A1C TA,[1] causing A1C LE to make a lot of noise.[2] Appellant was still in the room and as a result of the noise, placed her hand on A1C LE's mouth and told her to be quiet or words to that effect.

In the early hours of the following morning, Appellant texted A1C TA informing him that A1C LE was going to the hospital to determine if she had been raped and that he should "let the boys know." The next day Appellant again texted A1C TA indicating A1C LE was asking about what happened. Appellant told A1C TA to tell the others to "act like they don't know cause she's gonna ask them . . . Tell them to say they don't remember nd [sic] everything will be straight." The Air Force Office of Special Investigations (AFOSI) investigated the allegations of sexual assault made by A1C LE. Appellant was interviewed as a subject and subsequently charged with the offenses currently before this court.[3]

---

[1] At the time of these events, Appellant and A1C TA were involved in a sexual relationship with one another.

[2] As a result of the actions that took place that evening, A1C LE later made allegations of sexual assault against three different Airmen.

[3] Appellant was considered a subject in the initial AFOSI investigation as a conspirator in the alleged sexual assaults. She was read her rights for a violation of Article 120, UCMJ, 10 U.S.C. § 920. The pretrial hearing officer in that case opined that

*(Footnote continues on next page)*

## II. DISCUSSION

### A. Post-Trial Delay

Action in Appellant's case was completed 189 days after she was sentenced. This specific delay was caused by AFOSI initiating an investigation into whether Appellant was a victim of a sexual assault on the same evening involving the charges before us. Appellant seeks sentence relief in the form of disapproval of her bad-conduct discharge.

Convicted servicemembers have a due process right to timely review and appeal of courts-martial convictions. *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006). Accordingly, we review de novo Appellant's claim that she has been denied her due process right to a speedy post-trial review and appeal. *Id.*

In *Moreno*, the Court of Appeals for the Armed Forces (CAAF) established a presumption of unreasonable post-trial delay that requires a due process review when the convening authority does not take action within 120 days of trial, when a record of trial is not docketed with us within 30 days of the convening authority's action, and when we do not render a decision within 18 months of the case's docketing. *Id.* at 142.

If there is a *Moreno*-based presumption of unreasonable delay or an otherwise facially-unreasonable delay, we examine the claim under the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice." *Moreno*, 63 M.J. at 135. *Moreno* identified three types of prejudice arising from post-trial processing delay: (1) oppressive incarceration; (2) anxiety and concern; and (3) impairment of ability to present a defense at a rehearing. *Id.* at 138–39 (citations omitted).

We analyze each factor and make a determination as to whether that factor favors the Government or Appellant. *Id.* at 136. Then, we balance our analysis of the factors to determine whether a due process violation occurred. *Id.*; *see also Barker*, 407 U.S. at 533 ("[c]ourts must still engage in a difficult and sensitive balancing process."). "No single factor is required for finding a due process violation and the absence of a given factor will not prevent such a finding." *Moreno*, 63 M.J. at 136. However, where an appellant has not shown prejudice from the delay, there is no due process violation unless the delay is

---

there was insufficient evidence to support charging Appellant with conspiracy as to the sexual assault of A1C LE.

so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006). The period of 189 days between sentencing and action in this case is presumptively unreasonable, exceeding the standard by 69 days, and triggers a full due process review under *Moreno*.

Analyzing the reasons for the delay, we must take into account the complete chronology of events. As indicated earlier, Appellant was interviewed by AFOSI regarding the sexual assault allegations made by A1C LE. During that interview, she indicated that she engaged in oral sex with A1C TA but she did not assert that the conduct was nonconsensual. Additional evidence in the form of texts and statements attributable to Appellant support that her sexual conduct with A1C TA on the night in question was consensual. Nevertheless, during sentencing argument, Appellant's trial defense counsel asserted that Appellant was also sexually assaulted by A1C TA on the night in question but had never been considered a victim. While there is some disagreement as to exactly when the legal office was aware of Appellant's allegation of sexual assault, there is no dispute that AFOSI initiated an investigation approximately five weeks after the conclusion of her trial, on 5 August 2015, as a result of her counsel's sentencing argument. The report of investigation (ROI) was completed on 3 November 2015 and the convening authority (CA) finalized his decision not to pursue criminal charges on 16 December 2015. Action was finally taken by the CA on 30 December 2015. The staff judge advocate recommendation (SJAR) asserts that the CA decided to postpone post-trial processing until after the completion of the AFOSI investigation.[4]

Appellant's counsel was diligent in asserting Appellant's right to speedy post-trial review. He submitted a clemency package on 27 July 2015,[5] sent an email to the CA on 29 September 2015 asking for the status of the decision regarding clemency,[6] and filed a demand for speedy post-trial processing pursuant to Article 38(c) on 24 November 2015. Finally, after receiving the SJAR

---

[4] The SJAR mistakenly states Appellant claims she was raped.

[5] Clemency was submitted three days after the military judge authenticated the record, but well before service of the SJAR which was not provided until 17 December 2016, the day after the CA's decision not to charge A1C TA with sexually assaulting Appellant.

[6] On 3 September 2015, Appellant's trial defense counsel emailed the SJA inquiring as to the status of clemency, having been told by Appellant's first sergeant that the legal office told the unit the AFOSI investigation would have no impact on Appellant's sentence.

on 17 December 2015, Appellant's counsel filed a supplemental clemency package on 23 December 2015, including *inter alia* all of the previous requests for speedy post-trial review. This factor weighs heavily in favor of Appellant.

Lastly as to prejudice, Appellant claims particularized anxiety as a result of being unsure if, or when, she would be confined, taking her away from her newborn daughter during a time when mother-child bonding is critically important. Appellant gave birth to her daughter on 8 June 2015. The pretrial agreement included a provision to defer confinement for no less than 60 days after the child was born. The action established 11 January 2016 as the date confinement would start. Reduction in rank and forfeitures had already been executed in accordance with Article 57(a), UCMJ. While Appellant may have been understandably anxious about going to confinement, she had an additional four months of freedom, with her child, as a result of the delay. We do not find Appellant was prejudiced by the delay.

In the absence of prejudice, balancing the remaining factors, we do not find the delay so egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system. *See Toohey*, 63 M.J. at 362. Therefore, we find no due process violation. We note that although the SJAR asserts that the convening authority decided to postpone post-trial processing until after the completion of the AFOSI investigation, that document was not served on counsel until December and there is no evidence before us that trial defense counsel was aware of the decision to postpone post-trial processing. Even if he was so aware, trial defense counsel was not required to accept that course of action and we believe that the efforts he made to request speedy post-trial processing were appropriate in this case.

Although we find no due process violation in Appellant's case, we nonetheless consider whether Article 66(c), UCMJ, relief pursuant to *United States v. Tardif* is appropriate. 57 M.J. at 224. In resolving Appellant's request for *Tardif* relief, we are guided by factors enumerated in *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016), with no single factor being dispositive.[7] After balancing the

---

[7] These factors include: (1) How long the delay exceeded the standards set forth in *Moreno*; (2) What reasons, if any, the Government set forth for the delay, and whether there is any evidence of bad faith or gross indifference to the overall post-trial processing of this case; (3) Keeping in mind that our goal under *Tardif* is not to analyze for prejudice, whether there is nonetheless some evidence of harm (either to the appellant or institutionally) caused by the delay; (4) Whether the delay has lessened the

*(Footnote continues on next page)*

factors, we conclude no extraordinary exercise of our Article 66(c) authority is warranted here. Considered as a whole, Appellant's case has not been subjected to excessive delay, and we discern no particular harm to Appellant. The delay has not lessened the disciplinary effect of Appellant's sentence. The delay has not adversely affected our ability to review Appellant's case or grant her relief, if warranted. The circumstances of Appellant's case do not move us to reduce an otherwise appropriate sentence imposed by the military judge and approved by the convening authority.

## B. Sentence Appropriateness

Appellant argues that her sentence was inappropriately severe. We disagree.

This court reviews sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offenses, the appellant's record of service, and all matters contained in the record of trial." *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009). Although we are accorded great discretion in determining whether a particular sentence is appropriate, we are not authorized to engage in exercises of clemency. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010).

Appellant's convictions included assault consummated by a battery, whereby she placed her hand over the mouth of another Airman who was being sexually assaulted, and obstruction of justice for texting one of the alleged assailants, "they're taking her to Wilford Hall to run tests to see if she's been raped, so let the boys know. . . " and later sending another text stating, "Just tell them to act like they don't know cause she's gonna ask them. . . . Tell them to say they don't remember nd [sic] everything will be straight."

At trial, defense counsel advocated that Appellant was also a victim of a sexual assault that evening and that Appellant believed A1C LE consented to the sexual activity that took place. On appeal, appellate defense counsel renews the assertion that Appellant was herself a sexual assault victim and asserts that the sentence imposed by the military judge was based on the

disciplinary effect of any particular aspect of the sentence, and is relief consistent with the dual goals of justice and good order and discipline; (5) Whether there is any evidence of institutional neglect concerning timely post-trial processing, either across the service or at a particular installation; and (6) Given the passage of time, whether this court can provide meaningful relief in this particular situation.

characterization of the night in question as a sexual assault, whereas the true facts and circumstances of Appellant's offenses are minor in nature.[8]

We have given individualized consideration to Appellant, the nature and seriousness of the offenses, Appellant's record of service, and all other matters contained in the record of trial. Appellant's pretrial agreement allowed for the statutory maximum of a special court-martial: 12 months confinement, reduction to E-1, forfeiture of two-thirds' pay per month for 12 months, and a bad-conduct discharge. The approved sentence of a bad-conduct discharge, 75 days of confinement, forfeiture of $1,000.00 per month for four months, and reduction to E-1 was within the terms of Appellant's pretrial agreement and properly addressed her serious misconduct. The sentence was legally appropriate based on the facts and circumstances of this particular case and was not inappropriately severe.

## III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

KURT J. BRUBAKER
Clerk of the Court

---

[8] In an attempt to buttress this argument, counsel filed a motion to attach the results of the joint court-martial where the three Airmen accused of sexually assaulting A1C LE on the night in question were found not guilty. Appellant also submitted an affidavit alleging she had been diagnosed with a service-connected brain injury after her trial and the submission of clemency. This court denied the motion and these matters were not considered.