# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

———————————

**No. ACM 39713**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Cameron D. SUNDSTRUM**
Senior Airman (E-4), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 12 November 2020

———————————

*Military Judge:* Rebecca E. Schmidt.

*Sentence*: Sentence adjudged on 6 May 2019 by GCM convened at Malmstrom Air Force Base, Montana. Sentence entered by military judge on 21 May 2019: Bad-conduct discharge, confinement for 8 months, and reduction to E-1.

*For Appellant:* Major Rodrigo M. Caruço, USAF.

*For Appellee:* Lieutenant Colonel Brian C. Mason, USAF; Major Jessica L. Delaney, USAF; Mary Ellen Payne, Esquire; Alexis N. Dorner (legal intern).[1]

Before LEWIS, D. JOHNSON, and CADOTTE, *Appellate Military Judges*.

Senior Judge LEWIS delivered the opinion of the court, in which Judge D. JOHNSON and Judge CADOTTE joined.

———————————

---

[1] Ms. Dorner was at all times supervised by an attorney admitted to practice before this court.

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————————

LEWIS, Senior Judge:

A general court-martial composed of a military judge convicted Appellant in accordance with his pleas and pursuant to a pretrial agreement (PTA) of two specifications of attempting to use and distribute 1-propionyl-lysergic acid diethylamide (1P-LSD), one specification of wrongful possession of a controlled substance (psilocybin), and two specifications of wrongfully using and distributing 4-Acetoxy-N-N-dimethyltryptamine (4-AcO-DMT),[2] in violation of Articles 80, 112a, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 980, 912a, 934.[3] The military judge sentenced Appellant to a bad-conduct discharge, confinement for eight months, and reduction to the grade of E-1.

When action was taken on the sentence, the convening authority granted a deferment of mandatory forfeitures from 14 days after the announcement of sentence until the date of the entry of judgment (EoJ) and waived the mandatory forfeitures for a period of six months, release from confinement, or expiration of term of service, whichever is sooner, for the benefit of Appellant's wife. The military judge signed the EoJ two days after the convening authority's decision, on 21 May 2019. The parties did not file any post-trial motions with the military judge. On 7 June 2019, the court reporter certified the record of trial. On 24 June 2019, the record of trial was docketed with our court.[4]

———————————————

[2] The use and distribution of 4-AcO-DMT were on divers occasions. We note that 1P-LSD and 4-AcO-DMT were not controlled substances at the time of the offenses so a charged element of the Article 134, UCMJ, offenses was that Appellant's conduct was prejudicial to good order and discipline and of a nature to bring discredit upon the armed forces.

[3] References to the punitive articles of the Uniform Code of Military Justice (UCMJ) are to the *Manual for Courts-Martial, United States* (2016 ed.). All other references to the UCMJ and the Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2019 ed.).

[4] We find no facially unreasonable delay when this case was docketed with us 34 days after entry of judgment in light of our recent decision in *United States v. Livak*, ___ M.J. ___, No. ACM S32617, 2020 CCA LEXIS 315, at *6–7 (A.F. Ct. Crim. App. 14 Sep. 2020). Overall, it took 49 days from the date Appellant was sentenced to the date his case was docketed with our court. This is well below the aggregate standard threshold of 150 days established in *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006) and Appellant does not claim a *Moreno* due process violation. Appellant also does not claim that we should grant relief for excessive post-trial delay under *United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002) and we find no relief warranted.

Appellant's counsel submitted his case to us without a specific assignment of error, but Appellant personally raises one issue: whether his sentence is inappropriately severe, pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). We find no error that materially prejudiced Appellant's substantial rights and affirm the findings and sentence

## I. BACKGROUND

Appellant arrived at his second permanent duty station, Malmstrom Air Force Base (AFB), Montana, on 31 August 2017. According to Appellant, while undergoing some difficult personal circumstances, Appellant developed an interest in psychedelic substances in an effort to focus on something other than his personal problems. Appellant participated in multiple discussions of this topic with other Airmen in his squadron, some of which were in the unit's breakroom.

In mid-October 2017, one of the Airmen involved in the drug use discussions, Airman First Class (A1C) DB, obtained illegal, psychedelic mushrooms while on leave in Chicago, Illinois. On 1 November 2017, A1C DB returned from leave to his on-base residence with the mushrooms. Subsequently, more breakroom discussions occurred and A1C DB told his fellow Airmen about his recent acquisition of mushrooms. Appellant expressed an interest in using some.

On 19 December 2017, Appellant texted A1C DB and asked if "all those shrooms" had been used because Appellant wanted to "trip" into the New Year. A1C DB responded that he still had some mushrooms and offered them to Appellant for free. That same day, Appellant went to A1C DB's on-base house and obtained a plastic bag that was one-quarter full of the mushrooms. At trial, Appellant admitted the mushrooms he obtained contained some amount of psilocybin. Once Appellant had the mushrooms, he placed them in his car and returned to his off-base home. What happened to the mushrooms after Appellant returned home was not addressed in Appellant's trial. Appellant only confirmed that there was never any forensic testing performed on them.

A second member of Appellant's unit, A1C CH, also shared Appellant's interest in psychedelic drugs. The two watched YouTube videos about psychedelic experiences, including while at work in the breakroom. Appellant and A1C CH agreed to share the cost for Appellant to purchase a "research chemical" called 4-AcO-DMT, from a Canadian company's website. The website warned that 4-AcO-DMT was "for laboratory use only" and "not approved for human consumption." Appellant's research showed that ingesting this substance produced similar effects to using psilocybin mushrooms. Using a cryp-

tocurrency,[5] Appellant succeeded in purchasing 4-AcO-DMT. A package containing 4-AcO-DMT, in white powder form, was delivered to Appellant's off-base residence.

With the substance in hand and A1C CH visiting his home, Appellant used a kitchen scale to weigh precise amounts of 4-AcO-DMT. Appellant explained to the military judge how important the weighing process was because "somebody could easily ingest too much" and if they did, from Appellant's understanding, "they would just go into a psychotic state, depending on the person."

After the weighing was complete, Appellant swallowed the powder and drank water. Within 30 minutes Appellant felt the effects of using the substance. Appellant stipulated that patterns looked different than normal, colors were more vibrant, events were funnier, and noises sounded deeper-pitched to him. On this same occasion, Appellant distributed some of his 4-AcO-DMT powder to A1C CH who also ingested it.

At a later point, Appellant and A1C CH described their use of 4-AcO-DMT to three additional Airmen in their squadron, which led to later social gatherings at Appellant's house where he used more 4-AcO-DMT and distributed it to these Airmen. Appellant ordered more of the substance from the Canadian company, doubling the original amount for this second order, and some of the Airmen paid him to defray the cost. One of the Airmen said ingesting the substance made him "make uncontrollable grunting noises."

The website Appellant used to buy 4-AcO-DMT also sold another substance, 1P-LSD, in "tabs" on a perforated sheet of paper. Appellant's research showed that use of 1P-LSD was expected to impair depth and time perception and to distort perception of the shape and size of objects, movements, colors, sound, and touch. It took Appellant several tries, but eventually he bought ten tabs of what he thought was 1P-LSD. He used one tab and distributed one tab to A1C CH. Both hoped to feel the psychedelic effects described above. Neither felt any effects. At a later date, another Airman retrieved one of the tabs from Appellant's cabinet and ingested it. This Airman did not feel any effects either. This led Appellant to conclude that the substance he ingested and distributed to A1C CH was not 1P-LSD, and this conclusion accounted for his plea of guilty

---

[5] Cryptocurrency is any form of currency that only exists digitally, that usually has no central issuing or regulating authority but instead uses a decentralized system to record transactions and manage the issuance of new units, and that relies on cryptography to prevent counterfeiting and fraudulent transactions. Cryptocurrency Definition, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/cryptocurrency (last visited 27 Oct. 2020).

to only attempting to use and distribute 1P-LSD.[6] Appellant threw away the rest of the 1P-LSD tabs.

As Appellant and others in his squadron openly discussed psychedelic drugs, at some point their activities came to the attention of the Air Force Office of Special Investigations (AFOSI) through one or more confidential informants. On 1 August 2018, Appellant consented to a search of his cell phone and residence. A search of Appellant's cell phone revealed text messages exchanged with A1C DB before Appellant obtained the mushrooms from A1C DB. The cell phone search also uncovered electronic messages from the Canadian company including receipts for the orders of 4-AcO-DMT and what was identified as 1P-LSD. Two scales were also seized from the search of Appellant's residence, one of which belonged to Appellant, and the other to A1C CH. Forensic testing of Appellant's scale revealed Appellant's fingerprints on the scale along with 4-AcO-DMT residue.

## II. DISCUSSION

Appellant argues that the length of confinement and the bad-conduct discharge that were adjudged demonstrate "that the court-martial failed to adequately consider Appellant's record of service and the minimal nature of the charges." Appellant requests a reduction in both his confinement and his punitive discharge. Appellant does not ask us to compare his sentence with the sentences of others or allege that any other cases are closely related to his. *See United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999). The Government argues that the sentence is not inappropriately severe.

### A. Law

We review issues of sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006) (citing *United States v. Cole*, 31 M.J. 270, 272 (C.M.A. 1990)). We may affirm only as much of the sentence as we find correct in law and fact and determine should be approved on the basis of the entire record. Article 66(c), UCMJ. "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Sauk*, 74 M.J. 594, 606 (A.F. Ct. Crim. App. 2015) (alteration in original) (citing *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009)). Although we have great discretion to determine whether

---

[6] In the PTA, the convening authority agreed to dismiss with prejudice the words "on divers occasions" after the military judge accepted Appellant's pleas of guilty to attempting to use and distribute 1P-LSD one time.

a sentence is appropriate, we have no authority to grant mercy. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010) (citation omitted).

**B. Analysis**

Appellant does not explain why he believes that the military judge failed to adequately consider Appellant's record of service before adjudging the sentence. We see no support for Appellant's general assertion from the record of trial. "Military judges are presumed to know the law and to follow it absent clear evidence to the contrary." *United States v. Rodriguez*, 60 M.J. 87, 90 (C.A.A.F. 2004) (citation omitted). There is no evidence, let alone clear evidence, that the military judge did not fully consider the admitted evidence before her prior to announcing sentence. We briefly describe our view of that evidence.

Appellant's performance reports, some of which are very strong, were admitted as prosecution exhibits along with a personal data sheet showing his prior overseas service. No disciplinary actions were admitted as personnel records under R.C.M. 1001(b)(2). The Government called two witnesses from Appellant's current squadron to testify during sentencing. On cross-examination, trial defense counsel elicited favorable opinions regarding Appellant's rehabilitation potential from the two witnesses.

The military judge admitted favorable character statements as defense exhibits. Some of those character statements were written by members of Appellant's current squadron and others were from those who knew him at his first duty assignment. Various photographs were admitted as defense exhibits and showed Appellant's upbringing, family, significant events from his personal life and military career, and coins that he had received. Appellant made a written unsworn statement and a shorter oral unsworn statement. Appellant accepted responsibility and apologized to the unit for his actions. On the whole, Appellant presented a solid sentencing case centered on his acceptance of responsibility and an unblemished career.

Appellant argues that the charges are minimal in nature. We disagree. We have reviewed the particular circumstances of Appellant's case and the nature of the offenses. Appellant's interest in psychedelic drugs for a few months in late 2017 and early 2018 was significant. This was not a moment of weakness, but rather a hobby of Appellant's that he openly shared with other Airmen at the workplace. He took specific and persistent actions on this interest. It was Appellant who did the research, made the transactions, and hosted Airmen at his house. He was responsible for obtaining and distributing a "research chemical" to other Airmen in his unit, then obtaining a resupply of the substance and distributing it again. Appellant then expanded his efforts to a second substance and attempted to use and distribute it.

The trial counsel argued an appropriate sentence would be a bad-conduct discharge, 12 months of confinement, total forfeitures, and reduction to the grade of E-1. The maximum possible sentence Appellant could have received, based on an initial ruling by the military judge regarding the Article 134, UCMJ, offenses, was a dishonorable discharge, six years and four months of confinement, total forfeitures, and reduction to the grade of E-1. Less than two weeks before the trial, the convening authority agreed to the PTA terms submitted by Appellant which limited the type of punitive discharge the convening authority would approve to a bad-conduct discharge and the amount of confinement to 12 months.

We do not minimize Appellant's personal difficulties during the time of the offenses, but his distribution of 4-AcO-DMT on divers occasions and his attempt to distribute 1P-LSD one time to other Airmen are serious offenses. We considered Appellant's acceptance of responsibility in pleading guilty, his duty performance prior to trial including after the investigation started, and the extenuation and mitigation evidence presented in his case. We do not find his sentence inappropriately severe and this court has no authority to engage in clemency. *Nerad*, 69 M.J. at 146. Having given individualized consideration to Appellant, the nature and seriousness of the offenses, Appellant's record of service, and all other matters contained in the record of trial, we conclude that the sentence is not inappropriately severe.

### III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.[7]

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court

---

[7] The statement of trial results failed to include the command that convened the court-martial as required by R.C.M. 1101(a)(3). Appellant has not claimed prejudice and we find none. *See United States v. Moody-Neukom*, No. ACM S32594, 2019 CCA LEXIS 521, at *2–3 (A.F. Ct. Crim. App. 16 Dec. 2019) (per curiam) (unpub. op.).