# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 39979 (rem)**

———————————

**UNITED STATES**
*Appellee*

**v.**

**William C. MCALHANEY**
Airman Basic (E-1), U.S. Air Force, *Appellant*

———————————

On Remand from
the United States Court of Appeals for the Armed Forces

Decided 27 June 2023

———————————

*Military Judge:* Elizabeth M. Hernandez.

*Sentence:* Sentence adjudged on 7 July 2020 by GCM convened at Sheppard Air Force Base, Texas. Sentence entered by military judge on 29 July 2020: Bad-conduct discharge, confinement for 3 months, and a reprimand.

*For Appellant:* Major Benjamin H. DeYoung, USAF; Major Eshawn R. Rawley, USAF.

*For Appellee:* Lieutenant Colonel Matthew J. Neil, USAF; Major John P. Patera, USAF; Major Jay S. Peer, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, ANNEXSTAD, and GOODWIN, *Appellate Military Judges*.

Judge GOODWIN delivered the opinion of the court, in which Chief Judge JOHNSON joined. Judge ANNEXSTAD filed a separate dissenting opinion.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————

GOODWIN, Judge:

This case is before us a second time. A general court-martial composed of a military judge alone found Appellant guilty, in accordance with his pleas and pursuant to a plea agreement, of one charge under Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934,[1] and one specification of wrongful receipt of child pornography, and one specification of wrongful possession and viewing of child pornography. The military judge sentenced Appellant to a bad-conduct discharge, confinement for three months,[2] and a reprimand. The convening authority took no action on the findings or sentence but provided language for the adjudged reprimand. The military judge signed an entry of judgment reflecting the adjudged findings and sentence, including the reprimand language.

Appellant raised three issues during his original appeal: (1) whether the convening authority failed to consider Appellant's clemency submission in violation of Rules for Courts-Martial (R.C.M.) 1106 and 1109; (2) whether the Government's failure to serve Appellant with a complete copy of his record of trial (ROT) violates Article 54, UCMJ, 10 U.S.C. § 854, R.C.M. 1112(e), and due process; and (3) whether an improper reprimand in Appellant's case made his sentence inappropriately severe. This court found no error materially prejudicial to Appellant's substantial rights and affirmed the findings and sentence in Appellant's case.

Appellant petitioned the United States Court of Appeals for the Armed Forces (CAAF) to review his case, and the CAAF granted that petition on the following issue:

> Did the lower court err by applying plain error review in considering a question of sentence appropriateness, to wit: whether the wording of the reprimand rendered appellant's sentence inappropriately severe?

*United States v. McAlhaney*, 83 M.J. 164, 166 (C.A.A.F. 2023).

The CAAF affirmed our decision as to findings but reversed it as to sentence. *Id.* at 168. The CAAF found as follows:

> [The Air Force Court of Criminal Appeals] erred to the extent it separated Appellant's allegation of error in the reprimand into two issues. Because a reprimand is a component of an adjudged

---

[1] All references to the UCMJ and Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial, United States* (2019 ed.).

[2] The military judge sentenced Appellant to three months of confinement for each specification, running concurrently.

sentence, Appellant's challenge to the reprimand, both generally and as written, implicated sentence appropriateness which is reviewed de novo. The lower court failed to analyze whether the reprimand was appropriate, as written, under the proper de novo standard of review. To ensure that Appellant was not prejudiced by the lower court's seemingly erroneous view of the law, we set aside the lower court's opinion and remand the case for a new Article 66(d), UCMJ, determination using the correct de novo standard of review. We express no view as to how the new review should be resolved. That is a matter committed to the discretion of the lower court.

*Id.* (internal citation omitted).

Consistent with the CAAF's mandate, we review the adjudged reprimand anew pursuant to Article 66(d), UCMJ. After his case was again docketed with this court, Appellant identified one assignment of error: whether the written reprimand is inaccurate and inflammatory and thus lacking legal and factual sufficiency and rendering Appellant's sentence inappropriately severe. We conclude it was not.

## I. BACKGROUND

In approximately June 2018 and prior to entering active duty, Appellant began communicating with 15-year-old NC using the Snapchat and iMessage communication applications.[3] Appellant asked NC how old she was, and she responded she was 15 years old. By the end of June 2018, the conversations between Appellant and NC included sexually explicit topics. According to Appellant's stipulation of fact, "[d]uring numerous of these occasions [of sexually explicit communications], [Appellant] was the first to make comments and questions of a sexual nature." Also by the end of June 2018, Appellant had begun asking NC to send him nude photographs of herself.

Appellant entered active duty on 13 November 2018. Appellant and NC stopped communicating while Appellant was in basic military training (BMT) but resumed after he arrived at Sheppard Air Force Base (AFB), Texas, for technical school. Thereafter, Appellant began again asking NC for nude photographs of herself. In January 2019, NC told Appellant about a short video of herself having sexual intercourse with a 17-year-old male that Appellant did

---

[3] Snapchat and iMessage are social media applications.

not know. Appellant offered NC $30.00 for this video. NC agreed and sent the video to Appellant, who received and viewed the video.[4]

After Appellant received and viewed the video, NC asked him when he was going to pay her the $30.00 and reminded him that he had owed her the money "for a while [sic]." Thereafter, Appellant asked NC whether he could "see more of those vids or pics" after he sent her the money. NC questioned Appellant why she would send more pictures or videos, given that Appellant had not yet paid her. Thereafter, Appellant paid NC the $30.00 by PayPal. In the communications between Appellant and NC, both Appellant and NC discuss things of a sexual nature. It is apparent from context that NC is not naïve about sexual topics. However, Appellant is more frequently the party introducing sexual topics or asking sexual questions.

Appellant also communicated with ST before leaving for BMT. ST told Appellant that she was 15 years old. On 14 January 2019, while Appellant was on active duty, he told ST not to "make him come grab that cute a[**] and cuddle with [her]." That same day, Appellant told ST that he was "hard" and that he wanted to "see how well she gave head." Appellant also discussed fellatio, cunnilingus, and digital penetration with ST and how he wanted to see her after she had orgasmed. Appellant asked ST "whether she enjoyed masturbating with a hairbrush," offered to buy her a sex toy, and asked if she would let him see her using the sex toy. He called her "[his] baby girl." He told her that she was his, to which she responded that she was not allowed to date. He discussed ejaculating on her face. Near the end of the exchange on 14 January 2019, ST told Appellant, "You know you calling me yours is kinda hot."

On 15 January 2019, Appellant reinitiated the topic of ST being "his" and whether ST found that "hot." Appellant also asked ST about her underwear and asked to see her "a[**]" and "p[***]y." On 17 January 2019, Appellant and ST were discussing her opinion that she was overweight. During the discussion, Appellant told ST that she is not overweight and asked whether he "need[s] to kiss her whole body." Between 14 and 17 January 2019, Appellant's communications to ST were far more sexual in nature than her communications were to him.

On or about 20 January 2019, Appellant asked ST for a nude photograph of her masturbating. Thereafter, ST sent Appellant a photograph of her genitals with a wooden hairbrush penetrating her vulva.[5]

---

[4] NC was 16 years old when she sent Appellant the video.

[5] ST was 16 years old when she sent Appellant the photograph.

After the military judge sentenced Appellant to a reprimand, the convening authority issued the specific language of the reprimand, and the military judge entered it as follows:

> YOU ARE HEREBY REPRIMANDED! Your decision to wrongfully view and possess child pornography promoted the abuse and harm of children, and furthered the criminal enterprise of human sex trafficking, which is directly linked to child pornography. Your conduct has no place within the Armed Force or society at large. Be warned, further misconduct will result in additional criminal liability.

## II. DISCUSSION

### A. Legal and Factual Sufficiency of Appellant's Reprimand

In his assignment of error, Appellant claims the convening authority's reprimand is "inaccurate and inflammatory and thus lacks legal and factual sufficiency and renders Appellant's sentence inappropriately severe." We disagree with Appellant's argument and accordingly deny relief.

### 1. Law

We must review the wording of Appellant's adjudged reprimand de novo to determine whether it was inappropriate. *McAlhaney*, 83 M.J. at 167 (citing *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006)). We "may affirm only such findings of guilty, and the sentence or such part or amount of the sentence, as [we find] correct in law and fact and determine[ ], on the basis of the entire record, should be approved." Article 66(d)(1), UCMJ. "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009) (citations omitted). Although we have broad discretion in determining whether a particular sentence is appropriate, we are not authorized to engage in exercises of clemency. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010).

> A reprimand is a punitive censure. R.C.M. 1003(b)(1), Discussion. In practice, it is a frank and common-sense expression of formal disapproval by the convening authority to the accused regarding the offenses for which the individual was sentenced. The reprimand may be based on the offenses, the evidence and testimony admitted at trial, and other matters that are properly before the convening authority such as a clemency request or a victim impact statement. Our military justice system grants the convening authority the discretion to choose the words of the

reprimand. With few exceptions, in the Air Force, convening authorities are senior officers with a responsibility to preserve good order and discipline for the Airmen in their command.

*United States v. Wolcott*, No. ACM 39639, 2020 CCA LEXIS 234, at *16 (A.F. Ct. Crim. App 15 Jul. 2020) (unpub. op.).

### 2. Analysis

Appellant claims his reprimand is overly severe because it is legally and factually insufficient because no evidence was admitted supporting the section of the reprimand stating Appellant's offenses (1) "promoted the abuse and harm of children," or (2) "furthered the criminal enterprise of human sex trafficking."

In his brief, Appellant notes the following:

> Prior to trial, the [G]overnment disclosed that neither NC nor ST "appear to have been negatively affected" by Appellant's conduct, and that both "appear to have been willing participants" in sharing the video and image with Appellant. [Defense Exhibit M]. Neither NC nor ST personally appeared at Appellant's court-martial. ST provided a written unsworn statement [ ] which seemed to contradict the [G]overnment's pretrial disclosure, but which trial counsel did not reference in sentencing argument. Although trial counsel sought a bad conduct discharge, sixteen months of confinement, and total forfeitures of pay and allowances for Appellant's offenses, she nevertheless acknowledged, "We are aware that the accused is not a terrible person," "[W]e understand the accused is considered to be a good person," and that he was considered "hardworking and dependable."

(Citations omitted).

We do not consider sentencing arguments in our evaluation of this issue. However, we recognize that Defense Exhibit M, which is in evidence, contains trial counsel's impression that neither NC nor ST appeared to him as having "been negatively affected" and having apparently been "willing participants." However, as Appellant correctly notes, ST submitted an impact statement that rebuts this impression. In her impact statement, ST discusses her feelings at the time of sentencing that Appellant had coerced her into doing "obscene and illegal things." ST further discusses the depression, suicidal ideation, poor self-image, and negative impact on her relationship with her mother that she views as consequences of Appellant's actions.

While we recognize that Appellant may have viewed and possessed fewer images than offenders in many other child pornography cases, the evidence at

trial showed Appellant's receipt, possession, and viewing of child pornography were not a passive venture. Appellant did not simply engage in the viewing, possessing, and receiving of existing child pornography images. Rather, Appellant initiated the exchange of a child pornography video for money, and he convinced ST to create an image of child pornography. In both cases, and especially in ST's case, Appellant was the person initiating and encouraging discussion of sexual topics.

The military judge determined a reprimand was an appropriate punishment for the offenses. She made no clemency recommendation on the record to the convening authority. We presume the military judge was aware of R.C.M. 1003(b)(1) which required a reprimand to be issued in writing by the convening authority. *United States v. Erickson*, 65 M.J. 221, 225 (C.A.A.F. 2007) (citation omitted) (stating military judges are presumed to know the law and to follow it absent clear evidence to the contrary). In our view, if the military judge did not want to grant the convening authority the opportunity to punitively censure Appellant in writing, then she would not have adjudged a reprimand. There is little question that the military judge adjudged a reprimand believing it could serve a useful sentencing purpose.

It is important to recognize that de novo review of the reprimand does not require us to ask ourselves whether we would have worded the reprimand the same as the convening authority were we standing in her shoes.

A convening authority's discretion to reprimand is not unfettered, however. A convening authority cannot include language in a reprimand that directly references an offense that has been dismissed or resulted in an acquittal. *See*, *e.g.*, *United States v. Hawes*, 51 M.J. 258, 261 (C.A.A.F. 1999) (striking reference to offense dismissed on appeal from adjudged reprimand). In this case, however, we see no reference in the reprimand to any dismissed offense, or to an offense for which Appellant was acquitted.

As noted above, Appellant first takes issue with the convening authority's statement that his offenses "promoted the abuse and harm of children." Here, Appellant convinced a 15-year-old girl, NC, to exchange for money a sexually explicit video of herself and another individual, thereby arguably teaching or reinforcing to her that there is a financial market for sex-related images of herself. Granted, Appellant did not force NC to make the video; indeed, she appears to have agreed to its creation. However, it was solely Appellant's idea for NC to exchange the video for profit.

Appellant also convinced another 15-year-old girl, ST, to create an image of child pornography. Again, Appellant did not force ST to create this image. He did, however, flirt with her, introduce communications about sexual topics, expand those sexual topics over time, and ingratiate himself with her prior to

requesting and receiving the video. As discussed above, in the days leading up to his successful request for the video, Appellant discussed cuddling, various sex acts, her being "his," and his wanting to "kiss her entire body" so she would understand she was not overweight. Appellant was clearly the party chasing sexual gratification. Consequently, we find the convening authority's statement that Appellant's conduct "promoted the abuse and harm of children," is accurate under the circumstances.

Appellant also takes issue with the convening authority's statement that Appellant's conduct "furthered the criminal enterprise of human sex trafficking." While this appears—as it did before—a much closer call, we are not convinced that the statement is factually inaccurate such that it constitutes inappropriate punishment. In reaching this conclusion, we note that the convening authority is provided with significant discretion to choose the wording for a reprimand. This discretion is afforded to assist the convening authority in fulfilling her responsibility to preserve good order and discipline for the Airmen in her command. *See Wolcott*, unpub. op. at *16.

We also note that the convening authority did not reference a dismissed or acquitted offense, nor did she accuse Appellant of having committed human sex trafficking. Rather, she chastised him for committing conduct that "furthered" that enterprise. Paying a teenager for a video of child pornography and convincing a second teenager to create an image of child pornography furthers the child pornography trade. The expansive federal definitions of "human sex trafficking" incorporate a wide spectrum of sexual offenses that vary greatly in terms of violence and severity, and can include the exchange of depictions of minors engaged in sexual acts for money or other items of value.

For example, 18 U.S.C. § 1591(a)(1), *Sex trafficking of children or by force, fraud, or coercion*, covers a broad spectrum. On the more severe end of the spectrum, the statute prohibits this offense: obtaining or patronizing "a person . . . knowing that means of force, threats of force, fraud, [or] coercion . . . will be used to cause the person to engage in a commercial sex act." On the less severe end of the spectrum, 18 U.S.C. § 1591(a)(1) also makes illegal situations where someone "knowingly in or affecting interstate . . . commerce, or within the territorial jurisdiction of the United States, recruits, entices, . . . or solicits by any means a person . . . knowing . . . that the person has not yet attained the age of 18 years and will be caused to engage in a commercial sex act." Section 1591(e)(3) of Title 18 defines "commercial sex act" as "any sex act, on account of which anything of value is given to or received by any person." Section 7102(12) of Title 22 defines "sex trafficking" as "the recruitment . . . patronizing, or soliciting of a person for the purpose of a commercial sex act."

We fully recognize Appellant was convicted of the wrongful receipt, possession, and viewing of child pornography, and not "human sex trafficking" per se.

However, his conduct in committing these offenses matches some of the conduct described in federal definitions of sex trafficking of children. Thus the reprimand's reference to furthering "sex trafficking" addressed Appellant's charged misconduct. While we might not have worded the reprimand the same way as the convening authority were we in her shoes, that is not our task here. In light of the definitions cited above, we remain unconvinced her reprimand language is factually inaccurate such that it constitutes inappropriate punishment.

In addition to the reprimand, Appellant's adjudged sentence included three months of confinement for each specification to run concurrently and a bad-conduct discharge. The maximum punishment available under the plea agreement was forfeitures of all pay and allowances, 16 months of confinement, and a bad-conduct discharge, which the trial counsel suggested in sentencing argument. The military judge sentenced Appellant to less than the maximum allowable sentence under his plea agreement.

We have given individualized consideration to Appellant, the nature and seriousness of his offenses, his record of service, and all other matters contained in the record of trial. We consider whether Appellant's entire sentence was appropriate "judged by 'individualized consideration' of [Appellant] 'on the basis of the nature and seriousness of the offense and the character of the offender.'" *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (quoting *United States v. Mamaluy*, 27 C.M.R. 176, 180–81 (C.M.A. 1959)). We find no error materially prejudicing Appellant and conclude that the sentence is not inappropriately severe.

## III. CONCLUSION

The findings of guilty as to the Charge and its Specifications have been previously affirmed. The sentence as entered is correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59 and 66(d), UCMJ, 10 U.S.C. §§ 859, 866(d). Accordingly, the sentence is **AFFIRMED**.


ANNEXSTAD, Judge (Dissenting):

I must respectfully disagree with my esteemed colleagues. Upon taking a fresh, independent look at the evidence, I find that the convening authority's reference in the reprimand to Appellant "further[ing] the criminal enterprise of human sex trafficking" is not based on the offenses, nor is it supported by the evidence, testimony at trial, or other matters properly before the convening authority. Furthermore, it is misleading as to the nature of Appellant's offenses. Therefore, I would strike the above-quoted language from the

reprimand and approve the rest of Appellant's sentence as entered. *See United States v. Hawes*, 51 M.J. 258, 261 (C.A.A.F. 1999) (striking the language from reprimand that referenced an acquitted offense).

I agree that convening authorities have "significant discretion" to choose the words of the reprimand. *United States v. Wolcott*, No. ACM 39639, 2020 CCA LEXIS 234, \*21 (A.F. Ct. Crim. App. 15 Jul. 2020) (unpub. op.). However, that discretion is not without limits. As this court has made clear, the language in the reprimand should comport with "the offenses for which [an appellant] was sentenced and the evidence" supporting these offenses, and should not, under any circumstances, refer to dismissed, acquitted, or uncharged misconduct. *Id*. at \*18. Consequently, the reprimand must be rooted in the record, and proportional to the offense.

In this case, Appellant pleaded guilty to, and was convicted of, one specification of wrongfully receiving child pornography, and one specification of wrongfully possessing and viewing child pornography. Therefore, the convening authority was free to comment on Appellant's wrongful receipt, possession, and viewing of child pornography. The convening authority exceeded her discretion here when she included language in the reprimand that Appellant "furthered the criminal enterprise of human sex trafficking." This language is inaccurate, inflammatory, and misleading. First, it is inaccurate because Appellant was not convicted of "human trafficking" or "sex trafficking," nor is there any evidence, not a single reference, in the record suggesting that Appellant was engaged in a "criminal enterprise" or "trafficking" of any kind. Therefore, the reprimand is not rooted in the record. Second, it is inflammatory and misleading because it suggests a greater level of criminal culpability than Appellant's behavior and actions warrant. In that regard, it is not proportional to the offenses to which Appellant was found guilty.

For these reasons, I would find that Appellant suffered prejudice and would strike "and furthered the criminal enterprise of human sex trafficking" from the reprimand.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court