# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM S32685**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Sean C. VARONE**
Airman First Class (E-3), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 21 July 2022

————————————

*Military Judge:* Christina M. Jimenez.

*Sentence:* Sentence adjudged on 15 December 2020 by SpCM convened at Fairchild Air Force Base, Washington. Sentence entered by military judge on 29 December 2020: Bad-conduct discharge, confinement for 120 days, and reduction to E-1.

*For Appellant:* Lieutenant Colonel Garrett M. Condon, USAF.

*For Appellee:* Major Sarah L. Mottern, USAF; Mary Ellen Payne, Esquire.

Before POSCH, RICHARDSON, and CADOTTE, *Appellate Military Judges.*

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

PER CURIAM:

A special court-martial composed of a military judge sitting alone convicted Appellant, pursuant to his pleas, of attempted wrongful possession of 3,4-methylenedixoymethamphetamine (MDMA), failure to obey a lawful general regulation on divers occasions by wrongfully using his prescription Adderall in a

manner contrary to the intended medical purpose, wrongful distribution of Adderall on divers occasions, and wrongful use of MDMA, lysergic acid diethylamide (LSD), and psilocybin, in violation of Articles 80, 92, and 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 880, 892, and 912a.[1,2] Appellant entered those pleas in accordance with a plea agreement he made with the convening authority who referred the charges and specifications to trial by court-martial.[3]

When Appellant's court-martial convened, the military judge accepted Appellant's pleas and announced findings of guilty. The military judge sentenced Appellant to a bad-conduct discharge, confinement for 120 days, and reduction to the grade of E-1. In post-trial processing, the convening authority took no action on the sentence, and the military judge entered the findings and sentence as the judgment of the court-martial.

Appellant asserts one assignment of error pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). Appellant urges the court to find his sentence inappropriate compared to his "co-actors." Finding no error materially prejudicial to the substantial rights of Appellant, and exercising this court's responsibility to affirm only so much of the sentence that is correct in law and fact and should be approved, Article 66(d)(1), UCMJ, 10 U.S.C. § 866(d)(1), we affirm the findings of guilty and the sentence.

## I. BACKGROUND

Appellant's six convictions relate to offenses he pleaded guilty to committing between 8 March 2019 and 10 August 2019. As the factual basis for accepting Appellant's pleas, the military judge relied on Appellant's sworn statements during the providence inquiry[4] and a stipulation of fact. The court summarizes below relevant portions of the providence inquiry and stipulated facts.

---

[1] References to the punitive articles of the UCMJ are to the *Manual for Courts-Martial, United States* (2019 ed.).

[2] The specifications alleged that 3,4-methylenedixoymethamphetamine and psilocybin were schedule I controlled substances and Adderall was a schedule II controlled substance.

[3] In exchange for Appellant's pleas of guilty, the convening authority withdrew four specifications charged as violations of Articles 86, 92, and 134, UCMJ, 10 U.S.C. §§ 886, 892, 934, and dismissed with prejudice the withdrawn charges and specifications after announcement of sentence. The entry of judgment correctly records each dismissal with prejudice.

[4] Before placing Appellant under oath, the military judge explained Appellant's statements may be used against him in sentencing. Appellant acknowledged he understood.

## A. Adderall

During the relevant period, Appellant was prescribed Adderall, a stimulant with a high potential for abuse. On two weekends during the charged timeframe, Appellant not only gave his medicine to friends but also improperly ingested the drug himself by crushing it into a powder and then snorting it.

In May 2019, Appellant ingested his prescription Adderall with two Airmen at a servicemember's off-base home in Spokane, Washington. Appellant "offered if anyone else wanted to use the Adderall and the other two agreed." They formed the now crushed-up Adderall powder into lines and snorted the controlled substance from a countertop. Appellant used the drug in this manner so he could stay up late and continue drinking alcohol with his friends. He "also knew that the Adderall help[ed] [him] focus and connect with people by having deeper conversations." On a second occasion in June 2019, Appellant along with four Airmen snorted lines of Appellant's Adderall in a dormitory room on Fairchild Air Force Base (AFB), Washington. Appellant and the other Airmen had been drinking alcohol and Appellant used it "to feel more euphoric and social." The Airmen recorded videos of each other snorting the lines.

Appellant's plea to the charged offense established that, on divers occasions, he wrongfully distributed his prescription Adderall to other Airmen. It also established that, on divers occasions, he wrongfully used his prescription medicine in a manner contrary to an intended medical purpose. Appellant admitted he failed to obey a lawful general regulation, which Appellant admitted he had a duty to obey.

## B. MDMA

In March 2019, from his dormitory room on Fairchild AFB, Appellant texted another Airman. The conversation turned to a discussion about using MDMA, which they had talked about in-person before. The Airman asked Appellant how much MDMA he wanted, to which Appellant responded a "point"—one-tenth of a gram. Appellant believed the Airman could buy the drug from a civilian contact. Using a digital currency application, Appellant paid the Airman $30.00. Soon after, the Airman informed Appellant that the deal with his contact was cancelled and the Airman returned the money to Appellant. The conduct described in this paragraph was the basis for Appellant's attempted possession of MDMA conviction.

Between 1 June 2019 and 10 August 2019, Appellant used MDMA with four Airmen in a dormitory room on Fairchild AFB. Appellant knew the substance he ingested was MDMA because one of the Airmen told him it was. Two other Airmen crushed the drug into a powder and formed lines, one of which Appellant later snorted. Appellant "felt a sense of euphoria" and "joy" from using MDMA.

## C. LSD

Appellant and four Airmen went as a group to a house in Spokane where Appellant ingested a "hit" of LSD. The occupant of the house gave them the drug on small square pieces of cardboard wrapped in metal foil, and told them it was LSD. Appellant placed the hit in his mouth until it fully dissolved; he felt hallucinogenic effects from ingesting it.

## D. Psilocybin

On 10 August 2019, Appellant used psilocybin (mushrooms) with four Airmen in a dormitory room on Fairchild AFB. Appellant arrived to the room after others in the group had started consuming the psilocybin. The bag of mushrooms was passed to Appellant, who took and ate the mushrooms. He knew it was psilocybin because members of the group told him what it was. Appellant felt hallucinogenic effects after consuming the psilocybin.

## II. DISCUSSION

Appellant urges this court to reduce his sentence, particularly his confinement, explaining the sentence is inappropriate "especially when compared to his co-actors." For the reasons that follow, we are not persuaded that sentence relief is warranted. Before examining Appellant's contention, we consider whether Appellant's sentence is inappropriate without regard to a sentence adjudged in another case. In that regard, we are mindful that sentence comparison is but one aspect of evaluating whether a sentence is inappropriate. *United States v. Anderson*, 67 M.J. 703, 707–08 (A.F. Ct. Crim. App. 2009) (per curiam).

## A. Sentence Review

### 1. Additional Background

During sentencing, trial defense counsel introduced seven exhibits and testimony from Appellant's aunt. She described Appellant's difficult childhood, especially in school, and that he did not have much "structure growing up." Appellant's sentencing argument focused on Appellant using drugs to "fit in" and his "self-medicating" for medical issues including attention-deficit/hyperactivity disorder. Appellant's unsworn statement described that "[his] family moved quite a bit so [they] weren't in a single place for too long" and he "ended up going to four schools by the time [he] reached fifth grade." In Appellant's telling, "I was kind of a troubled kid with parents that weren't around and that led me . . . and my siblings to raise ourselves at an early age."

Appellant's service records were admitted in sentencing. They included a record of nonjudicial punishment under Article 15, UCMJ, 10 U.S.C. § 815,

four letters of reprimand, and two letters of counseling. The adverse information generally portrayed Appellant as an Airman with a track record for not reporting for duty at the time prescribed. An enlisted performance report for the period of 17 January 2017 through 31 March 2020 states Appellant "[m]et some but not all expectations."

**2. Law**

A Court of Criminal Appeals (CCA) reviews de novo the question whether all or part of a sentence is inappropriate. *See United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006). In conducting this review, a CCA may affirm only "the sentence or such part or amount of the sentence" as it finds "correct in law and fact and determines, on the basis of the entire record, should be approved." Article 66(d)(1), UCMJ, 10 U.S.C. § 866(d)(1). It follows that a sentence should be approved only to the extent it is found appropriate based on a CCA's review of the entire record.

"We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Sauk*, 74 M.J. 594, 606 (A.F. Ct. Crim. App. 2015) (en banc) (per curiam) (alteration in original) (quoting *Anderson*, 67 M.J. at 705). Although we are empowered to "do justice" in reference to a legal standard, we have no discretion to grant mercy. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010) (citation omitted).

**3. Analysis**

We have considered the particular circumstances of Appellant's case, including multiple convictions stemming from involvement with several controlled substances, including wrongful distribution of his prescription Adderall. We also considered Appellant's service records as they bear on his duty performance and rehabilitation potential. We have given individualized consideration to Appellant, the nature and seriousness of the offenses, Appellant's record of service, and all other matters contained in the record below. Without regard to sentences adjudged in other cases, we conclude that Appellant's sentence consisting of a bad-conduct discharge, confinement for 120 days, and reduction to the grade of E-1, is hardly inappropriate.

**B. Sentence Disparity Claim**

Next, we examine Appellant's contention that his sentence is inappropriate compared to sentences adjudged in four cases of Airmen who, like Appellant,

were involved with illegal drugs.[5] According to Appellant, "They were all friends, in the same unit, were generally using drugs together, were investigated jointly, and all went through a special court-martial at approximately the same time."

Appellant's case presents a question similar to *United States v. Durant*, 55 M.J. 258 (C.A.A.F. 2001). In that case, the United States Court of Appeals for the Armed Forces (CAAF) considered whether a Court of Criminal Appeals (CCA) has a duty "to mitigate a sentence, which that court otherwise determines to be appropriate, simply because an appellant's coactor receives substantially less punishment at his or her court-martial." *Id.* at 259. The CAAF ultimately determined no relief was warranted for the sentence disparity and the CCA did not abuse its discretion in summarily affirming the sentence. *Id.* at 262–63. Importantly, in its conclusion the CAAF endorsed a CCA "reviewing [an] appellant's sentence for appropriateness *and* uniformity" *Id.* at 263 (emphasis added).[6]

### 1. Additional Background

In separate courts-martial, Appellant and the four Airmen were each found guilty by a military judge sitting alone, of various drug-related offenses. According to the entry of judgment in each case, some of the charges were similar by date or offense, but none of the five Airmen (including Appellant) faced identical charges. JD was sentenced to a bad-conduct discharge, confinement for two months, forfeitures of $1,155.00 pay per month for six months, reduction to the grade of E-1, and a reprimand. BS was sentenced to a bad-conduct discharge, confinement for two months, reduction to the grade of E-1, and a reprimand. CT was sentenced to a bad-conduct discharge, confinement for 45 days, forfeiture of $1,155.00 pay per month for two months, and reduction to the

---

[5] The court granted Appellant's motion to attach extra-record documents, specifically the entry of judgment in each of the four other cases. The Government objects to our considering these documents. For the reasons we discussed in *United States v. Behunin*, we assume without deciding that we may consider the results in other cases in conducting our review for relative uniformity as part of our Article 66, UCMJ, 10 U.S.C. § 866, sentence review. No. ACM S32684, 2022 CCA LEXIS 412, at *24 (A.F. Ct. Crim. App. 18 Jul. 2022) (unpub. op.).

[6] The *Durant* conclusion might suggest that a CCA's review for relative uniformity is separate and distinct from evaluating whether a sentence is inappropriate. Elsewhere, however, the opinion treats a CCA's uniformity review as one component of that evaluation. 55 M.J. 258, 261 (C.A.A.F. 2001) (stating, for example, that "[t]he military justice system promotes sentence uniformity through Article 66[, UCMJ,] and the requirement that the [CCAs] engage in a sentence appropriateness analysis").

grade of E-1. Finally, JS was sentenced to a bad-conduct discharge, confinement for 120 days, reduction to the grade of E-1, and a reprimand.

**2. Law**

In *United States v. Lacy*, the CAAF described a CCA's "sentence review function" as "highly discretionary." 50 M.J. 286, 288 (C.A.A.F. 1999). Our responsibility in that regard includes "considerations of uniformity and even-handedness of sentencing decisions." *United States v. Sothen*, 54 M.J. 294, 296 (C.A.A.F. 2001) (citing *Lacy*, 50 M.J. at 287–88). In conducting such reviews, we "are required to engage in sentence comparison only 'in those rare instances in which sentence appropriateness can be fairly determined only by reference to disparate sentences adjudged in closely related cases.'" *Id.* (quoting *United States v. Ballard*, 20 M.J. 282, 283 (C.M.A. 1985)).

In *Lacy*, the CAAF observed the interplay between individualized sentencing and uniformity:

> Congress has furthered the goal of uniformity in sentencing in a system that values individualized punishment by relying on the judges of the Courts of Criminal Appeals to "utilize the experience distilled from years of practice in military law to determine whether, in light of the facts surrounding [the] accused's delict, his sentence was appropriate. In short, it was hoped to attain *relative* uniformity rather than an arithmetically averaged sentence."

50 M.J. at 288 (alteration in original) (quoting *United States v. Olinger*, 12 M.J. 458, 461 (C.M.A. 1982) (additional citation omitted)).

When arguing sentence disparity and asking the court to compare Appellant's sentence with the sentences of others, "an appellant bears the burden of demonstrating that any cited cases are 'closely related' to his or her case *and* that the sentences are 'highly disparate.'" *Id.* (Emphasis added). At the same time, a CCA is not "constrained to specifically limit its comparison of sentences to closely related cases." *United States v. Wacha*, 55 M.J. 266, 267 (C.A.A.F. 2001); *see also Anderson*, 67 M.J. at 705 ("In making a sentence appropriateness determination, [CCAs] are required to examine sentences in closely related cases and permitted, but not required, to do so in other cases." (citing *Wacha*, 55 M.J. at 267–68) (additional citation omitted)). "If the appellant meets that burden, or if the court raises the issue on its own motion, then the Government must show that there is a rational basis for the disparity." *Lacy*, 50 M.J. at 288.

Cases are "closely related" when, for example, they include "coactors involved in a common crime, servicemembers involved in a common or parallel

scheme, or some other direct nexus between the servicemembers whose sentences are sought to be compared." *Id.* The test for whether sentences are "highly disparate" is "not limited to a narrow comparison of the relative numerical values of the sentences at issue, but also may include consideration of the disparity in relation to the potential maximum punishment." *Id.* at 289.

"Sentence comparison does not require sentence equation." *Durant*, 55 M.J. at 260. "[T]he military system must be prepared to accept some disparity in the sentencing of codefendants, provided each military accused is sentenced as an individual." *Id.* at 261. "[C]harging decisions by commanders in consultation with their trial counsel, as well as referral decisions by convening authorities after advice from their Staff Judge Advocates, can certainly lead to differences in sentencing." *Id.*

**3. Analysis**

Appellant's brief focuses on the difference between his case and JS's, as does this court. Both cases involve convictions for drug distribution, and, in that important respect, are dissimilar from the other three. Appellant explains that whereas he "distributed his prescribed Adderall to the others," JS "introduced onto base and distributed LSD and psilocybin to the others." Appellant urges the court to reduce his confinement on grounds that he and JS were both adjudged 120 days, even though Appellant was the least culpable of the two.

In response to this point, the Government argues that Appellant's distribution of his prescription Adderall is "particularly aggravating." The Government reasons, "[I]n the same way it would be unfair to compare Appellant's sentence with members not convicted of Adderall distribution, it too would be unfair to compare [JS]'s sentence to Appellant's sentence." This is because "there is something uniquely troublesome about the fact Appellant abused his legal prescription to commit illegal activity and to invite others to do so too."

We need not determine whether the four cases cited by Appellant are closely related to his case, or whether the Government can show a rational basis for sentencing differences. Appellant has failed to establish that his sentence, as compared to those of the other Airmen, is highly disparate. *See Lacy*, 50 M.J. at 288. From our review of each entry of judgment, the results of each of the five courts-martial included a bad-conduct discharge, some period of confinement, and reduction to the grade of E-1. Appellant's case is most analogous to JS's. Both Airmen wrongfully distributed a controlled substance and received the *same* amount of confinement. Even if we were to accept Appellant's argument that JS's convictions show greater culpability than his own, the difference is hardly extreme such that granting sentence relief on the basis of sentence disparity would be warranted.

**C. Conclusion of Sentence Review**

In conducting a sentence review, a CCA has responsibility to evaluate "both the data provided by [an] appellant and the specific circumstances of [an] appellant's case." *United States v. Washington*, 57 M.J. 394, 401 (C.A.A.F. 2002). We have done so. Appellant's sentence is not inappropriate based on the record below and also with regard to findings and sentences adjudged in other cases that were brought to this court's attention on appeal.

In our examination of the results of Appellant's court-martial both individually, and in relation to the others, we "utilize the experience distilled from years of practice in military law" as our superior court allows when a CCA examines questions of sentence disparity. *Lacy,* 50 M.J. at 288; *see also Ballard*, 20 M.J. at 286 (observing that "military lawyers who find themselves appointed as trial judges and judges on the courts of military review have a solid feel for the range of punishments typically meted out in courts-martial"). It is an unfortunate reality that we are especially mindful of the range of punishments in drug cases from hundreds of such cases we have seen in our careers. We are confident that granting relief would not further the objective of relative uniformity in sentencing "in a system that values individualized punishment." *Lacy*, 50 M.J. at 288.

Appellant's case is not one of "those rare instances in which sentence appropriateness can be fairly determined only by reference to disparate sentences adjudged in closely related cases." *Sothen*, 54 M.J. at 296 (citation and internal quotation marks omitted). For the reasons discussed, the sentence that "should be approved," Article 66(d)(1), UCMJ, can be determined solely by reference to the record of proceedings below. Having considered all matters before the court in conducting our sentence review, Article 66(d)(1), UCMJ, we conclude that relief is not warranted.

## III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court

9